Case number 153542. Jason Blesedell v. Chillicothe Telephone Company et al. Argument not to exceed 15 minutes per side with 15 minutes to be shared by the defendants. Mr. Koko can proceed for the appellant. May it please the court. My name again is Mark Koko. I'm an attorney representing Jason Blesedell, the case. I'd like to reserve three minutes for rebuttal. This case is really very simple. Mr. Blesedell, a longtime union employee of the Chillicothe Telephone Company, was terminated for a reason, for reasons, for things that he did not do. And the union, his union, failed to fulfill its obligations to him in every way basically conceivable. The district court improperly applied the summary judgment standard in it, in that it failed to construe the evidence in favor of Mr. Blesedell and to recognize material factual disputes in the record. Did you want to reserve some time for rebuttal? I'm sorry. Yes, I did. Three minutes. I should have done that. I forgot. The material factual disputes include the reasons for Mr. Blesedell's firing, the failure of Chillicothe Telephone to investigate the matter prior to firing Mr. Blesedell, the union's utter failure to gather evidence or even attempt to advocate on behalf of Mr. Blesedell, and also the basic facts underlying the defamation claim. I'd like to turn first to the hybrid 301 claim against the union and the company. There's two elements to that claim, and the first element deals with the idea of whether there was a breach of the contract with the company. The contract has a just cause provision for termination in it, and a very short provision just says, just cause. And there were two reasons advanced by the company as to why they terminated Mr. Blesedell. The first dealt with the idea that in essence he did no work on the afternoon of December 4th. And the other deals with the calls that a customer, Brad Carroll, made concerning some down lines in the area. Well, if he didn't work, that'd be just cause, wouldn't it, if he was paid? Well, it sure would be, Your Honor, but if there's any factual issue in this case, it's certainly about what Mr. Blesedell did or didn't do in the afternoon of the 4th. There's extensive... Impersonating a customer would also be just cause, wouldn't it? Pardon me? Impersonating a customer would also be just cause. I guess that would also be just cause, Your Honor, but again, factual disputes relating to that. And if I could just highlight how the evidence that is in the record relating to Mr. Blesedell on those issues. First of all, on the afternoon of December 4th, there's extensive testimony, deposition testimony from people he actually did work for, not just from Mr. Blesedell, about what he did and when he did it and why he did it, including other employees of the company relating to it. With regard to these calls by Brad Carroll, there is deposition testimony from Brad Carroll that he made the call, from Brad Carroll's wife that he made the call, besides testimony from Mr. Blesedell. You understand that the issue in this case is not whether or not he in fact committed the infractions he's alleged to have committed, don't you? Your Honor, I understand that the first part of this, the just cause provision, that is the issue. Well, the ultimate issue, but with respect to both of your claims, really goes to the intent, the mindset of the individuals involved. Well, Your Honor, I think it goes... On the one hand, his supervisors and on the second hand, his union representatives. Well, on the first hand, focusing on the company, their intent, I don't see that their intent is involved in this situation. The union, excuse me, not the union, the company, the idea is whether there was a just cause under the contract to terminate. That is a pure factual issue. Now, the other, the union, the company has tried to make the issue that in essence there is some kind of a type of honest belief doctrine that's applicable to this type of case, the honest belief doctrine that applies in pretext analysis and discrimination cases. There simply isn't such a thing applicable. So you think we really are relitigating the issue of whether or not he, what he did on the afternoon of December 4th? Your Honor, if you're talking about the first part of it, the just cause provision relating to the company and whether we breached the contract, whether the was the contract bleached, that's basically the standard we're dealing with on that situation. And is there evidence of a breach or not evidence of the breach? They are trying to inject the honest belief concept in, which I do not believe has any applicability in this situation. Well, you might be right. And I agree with you on the second aspect of it. When you're focusing on the unions, what the union did or didn't do or should have done, there is more of what I would call also, I guess, sort of an intent element. Because when you look at the standards in the three different ways that we can meet the standard for the union not properly representing us, they do focus a little bit more on the conduct, overall conduct, and I guess you can get into more into an intent issue. But there's evidence of all three situations that we meet all three tests, and we only have to meet one of the three tests for the union, to satisfy the union aspect of this. And the first test relates to the arbitrary nature of their conduct. And that goes to, in essence, some of the case law, for instance, the Black case and the Shonover case, which are factual situations that are actually less egregious than this situation. It goes to, in essence, perfunctory handling of the matter by the union. We've set out in our brief very extensively the idea of what was done and what wasn't done in this case. The union represented him at, what, two stages of the grievance procedure? Yes, Your Honor. They held out. There wasn't any grounds for it, so they refused to go on. It was not taken arbitration. There were some initial grievance meetings, and yes, I think it went through two stages under the grievance process. Basically, when you go through the facts, as we set out in the brief and the deposition testimony we established, there was no investigation done in this situation. There was no conversations with Mr. Bleasdale trying to address issues. There were no documents provided by the union to the company. There was no attempt by the union to argue with any of the facts that the union put forth. The testimony is really pretty stark on that issue, and I can direct your attention on that to a section in my brief, really, on page 46 of the brief. There's some striking quotes from the company and from the union representatives about what was done and what wasn't done as far as trying to contest the claim in this case, where in essence, Mr. Morgan, the union representative, is admitting he didn't submit anything to the company. He didn't contest any claims. He didn't go out and try to nail down witnesses to contradict anything the company was saying. That is the essence of the arbitrary nature of the breach and the perfunctory handling of the breach. Obviously, that there is deference to the union in this area and the standard, we realize that. You have to look at the facts of this case as we set out in the brief. It's very important to do that. The other standard, there's a three part test. If we meet any of the test, it satisfies the overall standard. Goes to the idea of discrimination in this case. And it's not the idea of classic discrimination law that we're talking about. It's the idea that he was treated differently from other union members. Here, the testimony is undisputed, that Mr. Bleasdale is the only union member that was fired, who asked that his grievance be taken to arbitration, whose grievance was not taken to arbitration. Well, how many employees there asked the union to take it to arbitration? Your honor, I forget exactly. We had that discussion in the deposition testimony. I forget how many others there were, but there were three or four that the union president, Mr. Morgan, could mention, mentioned in the deposition that were taken at the request. Talking about over a year or 10 years? I really do not know exactly what time period we're talking about, but he is, Mr. Morgan, again, the union president, agreed. He is the only one that his grievance was not taken to arbitration in a firing situation when the grievant requested it. I'm gonna go back. I'm kind of taking you back to the employer for a minute. We have two cases that bear, it seems that I know of, that bear on the proper definition of just cause. One is this unpublished Wells Lamont case, and then we have another case, the Scott case, in which we approved a jury instruction defining just cause in a way that would be consistent with the questions I asked you. What do you make of those two Sixth Circuit authorities in articulating your position? Your honor, even looking at those authorities, I don't see how that that, in essence, allows the just cause provision to be turned into an at will provision. There is... I'm sorry, go ahead. There is a Ohio Supreme Court authority in the same type of situation we're talking about, which we cited in the reply brief, where there was an undefined, there was a just cause provision undefined in the contract. It just says just cause. And the court said, okay, an arbitrator can use the well recognized Doherty standard in labor arbitration cases for just cause, which becomes a heavily factual analysis in it. That's the Ohio Supreme Court interpreting the words just cause in a contract, and another contract entered into in Ohio. So if we're talking about interpreting, if you wanna add a legal overlay to contract words, which are just the words just cause, you should be looking at the Ohio Supreme Court's legal overlay that they're adding on it. I recognize the cases that you're talking about. They are not really recent cases, they are dealing in situations not what we're dealing with today. It's pretty old, but Wells Lamont is 2003. Here's Wells Lamont. Just cause is cause outside legal cause, which must be based on reasonable grounds, and there must be a fair and honest cause or reason regulated by good faith. And the Scott case approves the jury instruction that's almost identical to what I just said. And Your Honor, if you... What about, is there any... I understand that Ohio... I'm trying to think through the... I mean, it is a contract. Yes. And presumably, Ohio law would govern, although in the context of a section 301 action, I'm not sure what, if any, way to accord to the Sixth Circuit Authority. You don't have any contrary Sixth Circuit Authority. No, Your Honor. In the authority that you're citing, if you look at it, they're talking about reasonable grounds. Okay, that itself is a factual issue. What is reasonable, what isn't reasonable, what did they do in the investigation, etc., etc., etc. As we set out in our brief, they basically did nothing in the investigation. In essence, they're saying they can do nothing in investigating a case, not even talk to the person that they're saying, well, that's not you, that's you making the call, that's not that person. And yet, and they are somehow insulated, that there is no... Not even a factual issue of whether that was reasonable or not. Well, there was... I mean, they didn't just... I mean, they did actually quite a lot over a period of time. Well, Your Honor, they didn't. If you look at the record, Mr. Bleasdale was fired within three days, and basically over a weekend. He was brought in on a Friday, issues were brought up with him, he was asked to remember things that he had a brief conversation with them, and then he was fired on Monday after the alleged calls by Brad Carroll, in this case, by the calls by Brad Carroll. They didn't bother to talk to Brad Carroll, they didn't even talk to Mr. Bleasdale about the calls before he was fired in this situation. There was no investigation, in essence, relating to the situation and relating to the two reasons why he was supposedly fired. Your Honor, I see that my time is winding up at this point. I'll just come back on rebuttal and try to address any other issues that you might have. Thank you, Your Honor. Alright. Good morning, Your Honors. My name is Lou Clark with Squire Patent Boggs on behalf of the Applebee's, the Chillicothe Telephone Company, and Eric Stevens. Counsel for Local 578 and I will be dividing our time evenly, Your Honors. Your Honors, the district court properly applied the summary judgment standard when it granted the motion for summary judgment for the Chillicothe Telephone Company and Eric Stevens, and also on behalf of the union, Local 578. The court properly determined that the undisputed facts demonstrated that there was no genuine issue of material fact, that the Chillicothe Telephone Company complied with the collective bargaining agreement when it terminated Mr. Bleasdale's employment, and that the union met its obligation to fairly represent him. Notably, all the facts, despite what appellant's counsel would suggest, that the district court considered were all undisputed facts. Contrary to his contention, the district court did not disregard Mr. Bleasdale's evidence or his contentions, did not misapply the summary judgment standard. And just because Mr. Bleasdale takes issue with the facts that the company relied on to base the decision to terminate his employment does not equate to or create a genuine issue of material fact as to whether or not the company had just cause, and whether the company reasonably relied on those facts. It's clear, as Mr. Cocoa has suggested, that to prevail on a Section 301 claim, Mr. Bleasdale has to demonstrate both that the company breached the collective bargaining agreement and that the union failed to adequately represent him. But to develop a just cause, you have to ask the employee whether he did it or not, that his counsel claims you didn't even talk to him and just arbitrarily fired him, and that was the end of it. Well, Your Honor, certainly one of the things that's important to keep in mind is that the district court properly referenced the fact that this to do a post hoc examination and not to hold the company or the union to the standard that would apply to lawyers and judges and so on. In other words, the company is obligated to have just cause in order to terminate his employment. Whether those facts come by way of interviewing Mr. Bleasdale or otherwise is irrelevant. In this case, Your Honor, we have a company's brief and the union's brief that demonstrate that the company had a reasonable basis to conclude that Mr. Bleasdale did impersonate a customer when those phone calls were made. Those phone calls were made only two days after Mr. Bleasdale was confronted about what he did on December 4th. Mr. Bleasdale had worked for the company from 1996 until 2012, and at least five people from the company recognized his voice and also some recognized Mr. Carroll's voice and knew from listening to the phone calls that that was not Mr. Bleasdale. And what's also important to keep in mind, the record is clear. It is undisputed that not only Mr. Morgan, but every member of the grievance committee listened to the recordings of those telephone calls, and everyone concluded that that was you. Yes, both the grievance committee members, Mr. Morgan and five people from the company all listened to the telephone with the recordings. So I certainly don't think that because they may not have confronted Mr. Bleasdale and asked him, but the truth is, as Mr. Hymer mentioned, Mr. Morgan did ask Mr. Bleasdale, is that you on these calls? And he would not answer that question. He said, that's Brad Carroll. And in fact, in the one call, and Mr. Carroll himself said, I don't know if that's me on the second or third call. So even Mr. Carroll wasn't able to confirm what Mr. Bleasdale is contending. Do you agree with your adversary about the applicability of Ohio law and the Ohio Supreme Court's ruling in defining just cause? Your Honor, I think that the district court properly cited to the Scott and the Lamont cases, the Wells-Lamont cases, when it defined just cause. I think that is the proper standard for this court to determine. But I think what's also important to bear in mind is that this court is not to re-litigate just cause. It's not to re-litigate Mr. Bleasdale's grievance in the context of a district court decision. The question is whether or not the company had just cause. And frankly, whatever standard that's applied, whatever just cause is, the company had it. Well, that might be, but you know, we tend to like to set out what the standard is in our opinion. So, you know. I understand, Your Honor. I would contend that the district court properly cited to the Sixth Circuit Authority and Wells-Lamont. You didn't exactly answer my question. I believe that's correct standard, Your Honor. Well, no. Does Ohio law apply? I don't believe that it does. I think that the Sixth Circuit's authority is the applicable authority. Well, if Ohio law does apply, did your adversary correctly state the just cause standard? Yes. I don't know. Okay. I don't know, Your Honor. I apologize, but... Neither do I. No, I think that the just cause standard that the court applied in this case... The difference as I understand it is between the situation where the company very reasonably believed X happened, but that now we can determine X didn't happen. Exactly. In that hypothetical situation, what is the answer? You say the answer is it's what the employer reasonably believed. Exactly. But you could use the words, did they have cause, in an objective sense that didn't look at what the company believed. I mean, the words don't tell you that. That's just gotta be your analysis. Right. I understand. I mean, they're ambiguous in that sense. You could say, I had cause, even though I didn't know it. Those words parse. Right. I understand, Your Honor. I believe, though, that the district court's obligation is to determine whether or not the company had reasonable grounds... In their mind, not whether there were reasonable grounds, but whether it had... Right. Not to relitigate... Are you getting that from discrimination cases, or is that... Well, I do think that that concept... Pretty clearly the rule in discrimination cases, because there we're trying to govern... Intent. What people are... What employers are thinking. Exactly. We're talking about contractual obligations, which might apply even if the employer was misguided. Exactly. But I think, though, that the fact that in a 301 case, the district court is to determine whether or not the company breached the contract when you have a just cause standard. The court has to look at whether or not the company had a fair and honest cause or reason. And again, isn't to second guess, certainly it can scrutinize to a certain level. But again, the question is, what was the evidence that the company had before it when it made its determination? And that's the same sort of standard that an arbitrator would apply in an arbitration. And so here, Mr. Bleasdale can't use Section 301 as a vehicle to, again, relitigate or take whatever dispute he has, whether it's a collective bargaining, before the court and to relitigate that issue. That is not the law. I see I'm behind my time. If you have any questions further or otherwise, I'll defer to Mr. Highmore. Thank you. Thank you, Your Honors. Morning, Ryan Highmore. I represent the union in this case. Just to touch on the just cause provision, because I know there's been a lot of talk of that. As a labor attorney, a union side labor attorney, just cause really is what the arbitrator determines just cause to be. And it could be a different standard from one arbitrator to the next. And I think this court, when it reviews an arbitrator's determination of just cause, always provides almost ultimate deference to the arbitrator's determination. I don't think an arbitration award has been reversed out of the Sixth Circuit in a long, long time. And in fact... Doesn't that suggest that this case should have been taken to arbitration by the union? Absolutely not, because then you have to look at the union's duty of fair representation and what actually it did at the time it was doing it. And the summary judgment standards and review that this court is required to consider, you gotta look at what the disputed material facts are. So in order to determine what's material in a certain case, you've gotta look at the underlying substantive law and the related evidentiary burdens and boundaries. That means when evaluating a duty of fair representation case, we can't engage in any after the fact second guessing of opinions. And actually, Judge Seiler, 12 years ago in Garrison versus Kasson's transport, instructed us that we must be ever vigilant to avoid the distorting effects of hindsight when evaluating a union's decision in prosecuting a grievance, even where a union commits a devastating error. Is your duty of representation analogous to that of a lawyer? No, absolutely not. It's actually a lot different. And as lawyers, I wanted to... What is there? Can they just sort of reasonably come to the conclusion that the union member has a weak case and just not take the case in that? Yeah, and that's exactly what happened here. And the weakness can either be on the facts or it can be due to credibility issues, and it can be due to conflicting statements. Why don't they have a higher burden of sort of being an advocate for their member, rather than just being a judge? The Sixth Circuit has said that it's not akin to a learned professional's relationship, it's not akin to a fiduciary relationship that attorneys build clients... What's their interest in not furthering it? I mean, is it labor peace or something like that? Getting... The underlying policy behind it is... Hoping the employer will be nice to him in some other context or something like that? I'm just asking because the standards are different, you're saying. I'm wondering why the standards are different. What is the interest that's underlying that? The interest that's underlying it is that the courts don't want every case, no matter how weak, no matter how minute a contract violation is, to go in front of an arbitrator. I think the underlying... Well, it really doesn't either. I'm sorry? Probably because the union wants to protect, wants to maintain some degree of credibility with the arbitrators. Is that right? Well, I don't know that that actually factors into the case, but I can see your point. Because if a union is taking everything to arbitration, whether or not there's any merit to it, obviously the arbitrators panel, they're gonna love it because they're getting more and more and more and more cases, and they charge by the day. But you gotta put that aside, you gotta strip that aside. We have to think that the union, the employer, and the arbitrators are all professionals and they don't have any bad motives unless there's something on the face, something expressly said. And the arbitrators, if they keep getting claims that have no merit, yes, you're gonna lose credibility for the claims that really have merit as a union. Mr. Coco claims that this is the only case the union never took to arbitration over a long period of time. No, and Mr. Morgan, he was a business manager for, I believe, 12 years. He had actually in discovery, and it's in the record, cited a couple other cases that weren't taken to arbitration. And... That were not. That were not, correct. There were a couple that were and they won. That's fantastic, but not every discharge case that's arbitrated wins, and not every discharge case must be arbitrated. The Supreme Court said that in Vaca versus Sypes. It's strange that Mr. Morgan just sort of went and looked around. Well, he did a lot more than that, because you have to look at it at the time that Mr. Morgan was involved in this process. He went into the disciplinary meeting where Bleasdale was fired. Actually, the 14th of December, before he was fired, the Friday before he was fired, Mr. Morgan hears Jason Bleasdale's side of the story, because he's telling the employer that side of the story. The following Monday, after the unknown caller calls in, Mr. Bleasdale again tells a story. And it's a little bit different. And then Mr. Morgan asks Mr. Bleasdale to write out exactly what happened. On December 27th, he writes it out and it's actually a notarized statement. And again, it's different. It's a different story. So we have the employer... When and all of that, did he go and look around? In that same time period between the termination, he stated on the record that it was in December or January, but it was ultimately before the union decided not to proceed with arbitration. So it was during this critical time period that we must disassociate with our law degrees and must disassociate with after acquired evidence. We gotta look at this time period, time period of termination, and the time period the union decides not to take it to arbitration. And Mr. Morgan states that he drives around and he looks at the site. He does the site visit. He's heard three different stories from Mr. Bleasdale at this point. He's received sworn statements from some of Bleasdale's witnesses, and the stories are not jiving based on Mr. Morgan's experience working with the company and actually doing the same type of work that Bleasdale had done. He also reviewed information from the company and it's voluminous, it's in the record. They listened to recordings of the so called customer that called in and Mr. Morgan also had talked to Brad Carroll. Well, listen to Brad Carroll, let's put it that way. It's undisputed that he listened to Brad Carroll speak in this critical time period. And he also heard this unknown caller call in and Mr. Morgan determined, that's the same guy, that's Brad Carroll, that... I'm sorry, that's Jason Bleasdale, that's not Brad Carroll. He had heard it. He's not a voice expert, but you don't have to be a voice expert in the context of an arbitration, determining whether or not to go to arbitration. The union does not have to get a voice expert under these circumstances. And he also spoke with another union member who had stated that Brad Carroll said that he had gotten a bribe to say it was him on the call. Now, whether or not that's true, it doesn't matter, but this is all in the union business managers. It doesn't matter with respect to you all. I'm sorry? It might matter with respect to the company, but you're saying it doesn't matter with respect to you all. That's right. And the whole grievance committee thought that those recordings, the unknown caller on the recordings was Mr. Bleasdale. And when you have the conflicting recordings and statements of Mr. Bleasdale, and you have that doubt about whether that is Mr. Bleasdale calling in to cover his tracks, the union determined, after speaking with its international representative who had a lot of experience in dealing with arbitrations, and after talking with his committee, he determined that it was not a winner. And he advised... Did he make an argument that there was a union member who was trying to suck up to the company because he wanted to get a job, or that he had some sort of interest in... That's all conjecture. The business manager admitted he did... The strongest support for that idea. That he did... The union business manager did admit that he applied for a management position, but you have to look at that in the context of this company. The union representatives are not full time union reps. They actually work out in the field. They aren't paid exorbitant amounts of money to sit in a union hall and do whatever they do in the union hall. These are gentlemen that are out and women that are out working in the field. Is this Morgan we're talking about? Morgan, we're talking about Morgan. He worked for Chillicothe. Yes, he works for the employer as well. And he did apply for a management position, but there's no evidence in the record that he was trying to suck up to the employer. And there is case law that says even if the employer and the union have a sweetheart relationship, that does not support bad faith or discriminatory conduct. What's the time frame for that application? Do we know? I'm sorry? The time frame for the application, do we know? I do not know, Your Honor. I don't know when it was in the context of Mr. Bleasdale's termination. I think your time is up. Yes, it has been up. Thank you. Mr. Kaka. Very briefly, I wanna address a couple of things that were discussed. First of all, Judge Siler's question about the idea of every case being taken to arbitration. If you look in our briefs, we're citing deposition testimony in it. The question was, Mr. Morgan, was the idea of if someone was fired and they asked you to take the case to arbitration, was there anyone else other than Mr. Bleasdale's case that you did not take to arbitration? The answer was no. Mr. Bleasdale's was the only one. There may have been some others where the people were fired. They didn't ask to take it to arbitration. What is the relevance of asking, though? I mean, they don't have to make things to arbitration just because... Well, Your Honor, it feeds directly into one of the cases that we've cited, the Litton case, the Sixth Circuit case, which is the idea of being treated differently than other individuals, and every other situation where there was asked to be taken. It has to relate to something. You can say, well, nobody from... Nobody who was from this side of town has ever been allowed, or nobody whose last name started with Q has been allowed. I mean, you could say those are differences or those are not differences but the difference has to relate to something, doesn't it? Yeah, it relates to the idea of whether... Of taking the case to... Being willing to take the case to arbitration. In the Litton case... I'm talking about the difference between whether you're asked or not. Is there some sort of extra obligation to take cases when the employee asks for it? I mean, shouldn't they be... Arguably, I'm gathering from your opponent's argument that that's not the primary criterion. The primary criterion is whether it's a strong case. Well, Your Honor, presumably... We wouldn't want to do it if they opposed it, I suppose. Presumably, if the employee won't even ask the agreement, the union to take it to arbitration, it is not a strong case. And that's why they wouldn't even ask in the situation. That's why I think there's a distinction there. So whether they ask has to do with how strong it is? Right, at least in the employee's view, the strength of the case. Okay, thank you. Okay. And... Is there a reason that the only Ohio cases you cite in your brief that I've been able to find relate to the defamation issue? Your Honor, we cited an Ohio Supreme Court case in the reply brief that deals with the other issue that we were talking about, the just cause. The reply... I'm sorry, it escapes me. The name of it escapes me about the time I have, but it's an Ohio Supreme Court case cited in our reply brief. So it's the Ohio Children Services Board, it must be. I think it may be that case, Your Honor. And Judge Gibbons, your question about the last element, sort of the bad faith concept, there's much more to that than the idea of simply the job applications. There's several other important factors related to that. One is the idea that Mr. Morgan stopped allowing Mr. Bleasdale to be a union rep because he felt he was threatening his authority in the union. This also goes to his motives in dealing with this situation. Also, there's evidence in the record that the company viewed Mr. Morgan as someone who would just take the... I forget the exact quote again, but just show up, if you will, and go through the process without fully litigating a grievance. Notations in the record, again, from company letter statements about Mr. Morgan and his view about unions, about dealing with grievances with the company. Those all relate to that last factor, which again is the third independent factor of the three. And obviously, I haven't had much time to talk about the defamation claim at all, and I see my time is up. We've set that all out in our brief, but there is also a separate defamation claim in the case. Thank you. All right. We thank you both all for your arguments, and we'll consider the case carefully. The court may call the next...